<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES TRAISTER,<br><br>    Plaintiff,<br><br>    v.<br><br>JENNIFER VELEZ, COMMISSIONER, NEW JERSEY DEPARTMENT OF HUMAN SERVICES; and VALERIE HARR, DIRECTOR, NEW JERSEY DEPARTMENT OF HUMAN SERVICES, DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES,<br><br>    Defendants. | Civil Action No.: 11-3851<br><br>**MEMORANDUM AND ORDER** |

**SHERIDAN, U.S.D.J.**

On July 1, 2011, James Traister ("Mr. Traister") filed a complaint against the New Jersey Department of Human Services ("DHS") claiming that DHS violated the Federal Medicaid Act by denying Mr. Traister long term care Medicaid benefits. This dispute hinges on an asset transfer that allegedly occurred on August 25, 2009. Mr. Traister claims that his wife purchased a life estate in the home of their daughter in accordance with the asset transfer rules in New Jersey's Medicaid Program. DHS claims that Mrs. Traister gifted the alleged value of the life estate to their daughter, and that this uncompensated transfer rendered Mr. Traister ineligible for long term care benefits.

On July 7, 2011, Mr. Traister filed a motion for preliminary injunction, seeking to enjoin DHS from treating the August 25, 2009 asset transfer as an uncompensated asset transfer.

I

From 2002 until August 4, 2009, Mr. & Mrs. Traister lived in a carriage house on a lot in Annandale, New Jersey.  The Lot was owned by the Traisters' daughter and her husband ("Mr. & Mrs. Proske").  The Lot included three buildings, the main house, the carriage house, and the pool house.  During this period, the Proskes lived in the main house, and the Traisters lived in the carriage house.

On June 26, 2009, Mr. Traister was admitted to the hospital.  On July 10, 2009, Mr. Traister was transferred to Hunterdon Care Center.  On August 4, 2009, Mr. Transfer was transferred to Bridgeway Care Center, where he remains to this day.

On August 25, 2009, Mrs. Traister transferred $498,500 to the Proskes.  Mr. Traister claims that these funds were transferred as payment for a life estate in the Lot.  In support of this claim, Mr. Traister supplied a contract and deed dated August 25, 2009.  Additionally, Mr. Traister provided several documents to support his contention that the life estate was purchased for fair market value, including an appraisal conducted by a certified real estate appraiser, dated September 26, 2009, and valuing the Lot, as of August 22, 2009, at $1,125,000 (the "Appraisal"); plus a life estate interest table contained in the applicable publication of the United States Department of Health and Human Services (the "Table").  According to Mr. Traister, the value of the life estate was determined by multiplying the life estate factor listed in the Table that corresponded with Mrs. Traister's age on August 22, 2009 by the market value as determined by the Appraisal.  Finally, Mr. Traister claims that, since the value determined by the calculation ($510,266) exceeds the amount paid for the life estate, the life estate was purchased for fair market value.

In opposition to this claim, DHS notes that the life estate transfer deed was not recorded until

November 8, 2010. Furthermore, DHS claims that the valuation of the life estate actually corresponds to the maximum amount of funds the Traisters were allowed to retain while leaving Mr. Traister eligible for long term care Medicaid benefits.[1]

On September 16, 2009, Mr. Traister applied for long term Medicare coverage. On March 9, 2011, DHS denied Mr. Traister's application based upon the August 25, 2009 asset transfer.[2] While Mr. Traister was entitled to an elaborate State administrative appeal process, Mr. Traister declined to utilize this process, deciding instead to bring an action in federal court. *See* N.J.A.C 10:49-10.3(b); N.J. Ct. R. 2:2-3

## II

The standard for a preliminary injunction requires the plaintiff to establish the following four elements: (1) the plaintiff is likely to succeed on the merits; (2) denying the injunction will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in greater harm to the defendant; and (4) the injunction is in the public interest. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002). Courts have noted that a preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure

---

[1] According to DHS, an applicant in Mr. Traister's situation may retain resources valued at $111,560 and remain eligible for long term care. DHS believes that the value transferred on August 25, 2009 represents all of Mr. & Mrs. Traister's resources over and above the $111,560 limit.

[2] Notably, Mr. Traister's application for Ancillary Medicaid coverage, which includes doctors, prescriptions, and hospital stays under 30 days, was approved.

§ 2948, at 129-130 (2d ed. 1995)).  This is particularly true where affirmative relief is sought. *See Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994).  Furthermore, a preliminary injunction may not be issued where there are disputed issues of fact. *Gruntal & Co. v. Steinberg*, 845 F.Supp. 1, 15 (D.N.J. 1994).

### III

A.  The Interplay between Federal Medicaid and the State Program

Medicaid is a federally-created, state-implemented program designed, in broad terms, to ensure that people who cannot afford necessary medical care are able to obtain it. *See* 42 U.S.C. § 1396, *et seq.*  Although a state is not required to participate in the program, once a state agrees to establish a qualifying medical plan, the state must comply with the Medicaid statute and federal regulations. 42 U.S.C. § 1396a(a); *see King v. Smith*, 392 U.S. 309, 316-17 (1968).

New Jersey has chosen to participate in the Medicaid program, and has developed a State plan and has implemented the plan by promulgating statutes and regulations. *See* N.J.S.A. 30:4D-1 *et seq.*; N.J.A.C. 10:71-1.1 *et seq*.  As a participant in the Medicaid program, New Jersey is required to comply with Medicaid statute and federal regulations regarding "transfer of assets." 42 U.S.C.§§ 1396a(a)(18), 1396p; N.J.S.A. 30:4D-3(i)(15)(b).

B. The Transfer of Assets Provision (42 U.S.C. § 1396p©)

There are two separate issues in the dispute over the August 25, 2009 asset transfer.  The first issue deals with the operative subsection of the transfer of assets provision in the federal Medicaid statute. *See* 42 U.S.C. § 1396p(c)(1)(A).  According to this subsection, if an

institutionalized individual disposes of assets for less than fair market value during a specified time period, that individual is subject to a period of Medicaid ineligibility. *Id.*  The second issue deals with the definition of "assets" and exclusions thereto. *See* 42 U.S.C. § 1396p(c)(1)(J). Since the later issue presents a potential a barrier to the former, it will be addressed first.

### 1.  The Life Estate Exclusion (42 U.S.C. § 1396p(c)(1)(J))

The transfer of assets provision in the federal Medicaid statute excludes certain types of life estates. *Id.*  Specifically, life estates are excluded from the definition of "assets" within the section if they are purchased in another individual's home and if the purchaser resides in the home for a period of at least one year after the date of purchase. *Id.*  Thus, if an institutionalized individual purchases a life estate that meets the requirements of this section, there is no inquiry into whether the life estate was purchased for fair market value.

While the language of this section appears straightforward, the exact meaning is unclear. The text of this section provides that, "[f]or purposes of this paragraph with respect to a transfer of assets, the term 'assets' includes the purchase of a life estate interest in another individual's home unless the purchaser resides in the home for a period of at least 1 year after the date of purchase." *Id.*  In their opposition brief, DHS claims that this exclusion does not apply to Mr. Traister because Mrs. Traister failed to reside in the Property for a period of at least one year. *See* Opposition Brief, at 2. This argument assumes that the one year residency requirement must be met before the applicant applies for Medicaid. *See* 42 U.S.C. § 1396p(c)(1)(B)(ii).  Under this argument, any assessment of an asset transfer is fixed at the moment the applicant applies for Medicaid, and whether the applicant's spouse resides in the property after the date of application is of no moment.

The alternative interpretation of the statute, and the one favored by Mr. Traister, provides that the one year requirement can be met at any time. *See* Plaintiff's Brief in Support of Preliminary Injunction, at 6. Under this interpretation and as applied to the facts of this case, from September 16, 2009 until August 24, 2010, the life estate was an asset transfer capable of subjecting Mr. Traister to ineligibility for long term care, as well as a penalty period, and on August 25, 2010, it was not. Furthermore, if a determination was made and finalized before August 24, 2010, that determination could be void the moment Mrs. Traister lived in the Property for a period of one year.

There is, admittedly, not much guidance on this issue. Since this life estate exclusion was added to the statute in 2006, only one case has parsed this provision, and that case did not address the specific issue at hand. *See J.M. v. Div. of Med. Assistance & Health Svcs.*, 2011 WL 3802238, at *1-*2 (N.J. Super. A.D., Aug. 30, 2011) (finding that the provision could not apply because Plaintiff lived in the home for a period of less than one month). Additionally, the guidance provided by the federal organization responsible for administering the statute has not directly addressed this issue. *See Important Facts for State Policymakers*, Centers for Medicare & Medicaid Services, Jan. 8, 2008, at 2,(https://www.cms.gov/DeficitReductionAct/Downloads/TOAbackgrounder.pdf) (quoting the statute without explaining its operation); *New Medicaid Transfer of Asset Rules Under the Deficit Reduction Act of 2005*, Centers for Medicare & Medicaid Services, July 27, 2006, at 6 (same). Finally, while the intended interpretation of this language is uncertain, the policy behind the provision evinces an intent to deter the abuse of life estates within the transfer of asset rules. *See Important Facts for State Policymakers*, at 2; *New Medicaid Transfer of Asset Rules Under the Deficit Reduction Act of 2005*, at 6.

2.  The Operative Subsection (42 U.S.C. § 1396p(c)(1)(A))

According to the operative subsection, if an institutionalized individual disposes of assets for less than fair market value during a specified time period, that individual is subject to a period of Medicaid ineligibility. 42 U.S.C. § 1396p(c)(1)(A).  Thus, even if Mr. Traister's initial claim fails, the purchase of a life estate will trigger neither ineligibility nor a penalty period if the life estate was purchased for fair market value.

For New Jersey Medicaid purpose, the date on which fair market value is determined is the date on which the title is recorded or registered with the appropriate office. *See* N.J.A.C. 10:71-4.10(m)(1)(I); *H.K. v. Dept. of Human Services*, 184 N.J. 367, 381 (2005) (interpreting N.J.A.C. 10:71-4.10(m)(1)(I) and finding that, "because the penalty period is determined in part by the appraised value of the property on the date of transfer, the regulations create a precise modality for fixing that important valuation date").

Here, the appraisal was conducted on August 22, 2009, and the life estate transfer deed was recorded over fourteen months later on November 8, 2010.  Based on the values supplied by the Plaintiff, a reduction of the appraisal value of the Property from August 22, 2009 to November 8, 2010 in an amount of $24,941.43 may render the life estate a transfer of assets below market value. *See State Medicaid Manual*, United States Centers for Medicare and Medicaid Services, § 3258.9, July 27, 2006.

Generally, a preliminary injunction will not issue where there are disputed issues of fact. *Gruntal & Co. v. Steinberg*, 845 F.Supp. 1, 15 (D.N.J. 1994).  Here, there are at least three disputed issues of fact.  First, the value of the residence as of November 8, 2010 is presently in dispute. Second, the fact that the Traisters lived in the carriage house for nearly seven years without any

7

assignment of assets gives rise to a credibility issue as to the Traister's intention for making the payment seven years later.  Third, DNS claims the appraisal may be a sham because it allowed the Traisters to retain the maximum amount an applicant may hold and qualify under the regulations.  Mr. Traister's motion for a mandatory preliminary injunction requires Mr. Traister to carry the burden of persuasion "by a clear showing," of undisputed facts. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted).  Here, three disputes clearly show that this issue must de decided in favor of DHS.

### IV

This Court has reviewed all submissions and heard oral argument.  For the reasons set forth in the above Memorandum,

IT IS on this 13th day of October 2011,

ORDERED that Plaintiffs' first motion for preliminary junction [Docket #3] is denied.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.